### THE CENTAURUS.

### STRUTHERS & DIXON, Inc., v. GREEN STAR S. S. CORPORATION.

(Circuit Court of Appeals, Fourth Circuit. July 3, 1923.)

#### No. 2113.

1. **Maritime liens ⬥⟹6—General agent for steamship company not entitled to lien for payments made generally in due course of business.**

    A general agent for a steamship company is not entitled to a maritime lien for advances and disbursements made generally on account of the ships of its principal in the due course of its business for which no express and specific reservation of lien was made at the time.

2. **Maritime liens ⬥⟹6, 22—General agent for steamship company, which is owned by the company, not entitled to lien for advances.**

    A general agent for a steamship company, which is a corporation owned by the company, is not entitled to a maritime lien for advances made to vessels of the company, either under general maritime law or Act June 23, 1910, as amended by Act June 5, 1920.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit in admiralty by the Standard Oil Company of New Jersey against the steamship Centaurus. From an order dismissing intervening libel of Struthers & Dixon, Inc., it appeals. Affirmed.

For opinion below, see 282 Fed. 883.

John W. Crandall, of New York City (Hunt, Hill & Betts, of New York City, on the brief), for appellant.

Charles F. Quantrell, of New York City (T. Catesby Jones, of New York City, Stuart S. Janney, of Baltimore, Md., Bigham, Englar & Jones, of New York City, and Janney, Stuart, Slingluff & Williams, of Baltimore, Md., on the brief), for appellees.

Before WOODS and WADDILL, Circuit Judges, and McDOWELL, District Judge.

WADDILL, Circuit Judge. The appellant, Struthers & Dixon, Inc., is an intervening petitioner and libelant in the admiralty cause of Standard Oil Company of New Jersey against the steamship Centaurus, pending in the United States District Court for the District of Maryland, and by this appeal seeks to review and reverse the decree of the Maryland court rendered on the 9th day of November, 1922, dismissing its petition of intervention.

⬥⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The appellant, whose principal office was in San Francisco, seeks to intervene to establish a maritime claim against the Centaurus, owned by the Green Star Corporation, for sundry disbursements made on account of supplies, provisions, fuel, and stores furnished to said ship, and for advances made on her account while she was on the Pacific Coast, and particularly in the harbor of San Francisco. The amount sued for, and for which a lien against the ship is sought, is a balance of $10,-327.83. The home port of the Centaurus was New York, and the expenditures made on her account were by appellant, who made advances and caused the supplies, provisions, and other necessaries to be paid for and furnished to the ship while on the Pacific Coast as aforesaid, and it now in effect asks to be subrogated to the maritime status of the persons to whom such advances were made and who furnished such supplies. The appellant was the general agent for the appellee steamship company at San Francisco, not only for the Centaurus, but for a large number of other vessels owned by it, for all of which the agent procured and loaded cargoes, issued bills of lading, advertized sailings, executed charter parties for such vessels as carried bulk cargoes, expended money in payment of wages of crews, as well as for repairs, pilotage, towage, wharfage, stevedoring, custom house and other port dues, and other things required. The agent collected a large part of the freight due to the ship, in some instances remitting the collections to the owner, drawing drafts upon the latter for its disbursements, and in other instances the freight moneys were applied by the agent in whole or in part to reimburse itself for advances made by it generally.

While the agent claims to have kept separate accounts of receipts and expenditures from and for each ship, remittances to the owner were at times made in lump sums which neither represented the exact amount received from any one vessel, or the precise total from any number of them, and collections from the owner were made in like manner. Indeed, the agent in effect treated all the ships as owned by it, with the right to apply receipts from any one of them to any indebtedness contracted on account of any of the vessels.

The balance for which the suit is filed against the Centaurus was paid out prior to November 30, 1920, and the libel and petition of intervention was filed some 15 months later.

There is no dispute as to the amount due, the sole question being whether the appellant is entitled to maintain a maritime claim for the same, and it is admitted that there is no express agreement, oral or in writing, by which appellant, agent as aforesaid, reserved a specific lien upon the ships for the advances sued for. The District Court found the facts substantially as stated above, and in effect held that the appellant company was owned by the appellee steamship company.

[1] First. Has a general agent, as such, in the admiralty, the right to a lien for payments made by it in due course of its business? The general rule that such lien does not exist under the laws of the United States is too well settled to admit of serious controversy. A case may be found here and there to give color to this contention, but the great weight of authority is to the contrary. There are no facts here taking

the case out of the general rule. Minturn v. Maynard et al., 17 How. (U. S.) 477, 15 L. Ed. 235; The Larch, 2 Curt. 427, Fed. Cas. No. 8,-085 (14 Fed. Cas. pp. 1139–1142); The J. C. Williams (D. C.) 15 Fed. 558; The Americus (D. C.) 19 Fed. 848; The Esteban de Antunano (C. C.) 31 Fed. 920; The Raleigh (D. C.) 32 Fed. 633; China Mutual Ins. Co. v. Ward, 59 Fed. 712, 8 C. C. A. 229 (Second Circuit); The Cimbria (D. C.) 214 Fed. 131; The Gyda (D. C.) 235 Fed. 266.

It is earnestly insisted that the English authorities support the appellant's contention here. Assuming this to be true, which we do not feel called upon to express an opinion about, we think that we are bound by the almost unbroken line of American decisions to the contrary.

[2] Second. Not only is the appellant not entitled to recover under general maritime law for advances made generally on account of ships, and for which no express and specific reservation of lien was made at the time, in circumstances such as those here, but manifestly in this case, where the agent making the advances on account of the ship's owner was in fact the owner itself, that is to say, the agency company was owned by the steamship company, no lien therefor exists in admiralty against the ship. To permit it in this case would be in effect to give to the shipowning company a priority of lien in favor of itself, as against its creditors, and to allow the same to be set up 15 months after the debt was contracted, and when the shipowner had become insolvent, would be unthinkable. Grace v. Luckenbach (D. C.) 248 Fed. 953, same case, 258 Fed. 49, affirmed Circuit Court of Appeals for this circuit, 267 Fed. 676, certiorari denied 254 U. S. 644, 41 Sup. Ct. 14, 65 L. Ed. 454.

Third. Appellant relies upon the Ship Supply Lien Act of June 23, 1910, c. 373, § 1, 36 Stat. L. 604, as amended by the Act of June 5, 1920, c. 250, § 30, subsec. P, 41 Stat. L. 1005, in support of its claim to a maritime lien. The meaning of this act has been quite frequently before the Supreme Court, as it has also before this court, and a careful review of the decisions of these courts will give no support to the contention made here. Piedmont & Georges Creek Coal Co. v. Seaboard Fisheries Co., 254 U. S. 11, 12, 41 Sup. Ct. 1, 65 L. Ed. 97; The Francis McDonald, 254 U. S. 242, 41 Sup. Ct. 65, 65 L. Ed. 245; The Jack O'Lantern, 258 U. S. 96, 42 Sup. Ct. 243, 66 L. Ed. 482; United States v. Carver, 43 Sup. Ct. 181, 67 L. Ed. ——, decided January 2, 1923; Diebert Barge Building Co. v. United States, 289 Fed. 805, decided May term, 1923, of this court, and cases cited.

The decision of the District Court (282 Fed. 883) will be found to contain a succinct finding of facts in this case, with which, as well as the conclusions of law of the learned judge of that court, we are in full accord.

The decree appealed from will accordingly be affirmed.