### DEIBERT BARGE-BLDG. CO. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit.   May 1, 1923.)

No. 2081.

**Maritime liens ⬤⟾21—Furnisher of goods to prospective purchaser in possession of vessel held not entitled to lien.**

   Where a company which had contracted to purchase a vessel from the United States Shipping Board Emergency Fleet Corporation was in possession of the vessel, and such company's relations with a barge-building company, which performed work on and furnished supplies for the vessel, were such as to charge the barge-building company with knowledge of the existence of the rights of the government, and at all events to have advised it of the true condition respecting such rights, had it exercised the reasonable diligence required of one in its position, *held*, that it was not entitled to a maritime lien, in view of Act June 23, 1910 (Comp. St. §§ 7783–7787), as re-enacted by Merchant Marine Act, June 5, 1920.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore;  John C. Rose, Judge.

Proceeding in admiralty between the Deibert Barge-Building Company and the United States.  From a decree for the United States, the libelant appeals.  Affirmed.

John H. Skeen, of Baltimore, Md. (S. A. Williams, of Bel Air, Md., and Reuben Oppenheimer, of Baltimore, Md., on the brief), for appellant.

A. W. W. Woodcock, U. S. Atty., and Frederick W. Brune, Asst. U. S. Atty., both of Baltimore, Md., for the United States.

Before WOODS and WADDILL, Circuit Judges, and McCLINTIC, District Judge.

WADDILL, Circuit Judge.  The contest in this case is over the distribution of certain funds under the control of the court, arising from the sale of barge Northern No. 44, formerly known as the schooner barge Caskata, and of the right of appellant, the Deibert Barge-Building Company, to a maritime lien on said barge for work and labor on and materials furnished prior to the sale thereof in these proceedings had by consent of parties, and with the understanding that all rights of lien would be transferred to and preserved against the fund.

Appellant filed its libel and intervening petition in the District Court, setting up its indebtedness of $10,518.85, with interest, for which the maritime lien was claimed.  The libel charges that the bill was for re-

pairs upon the vessel while in the possession of its owner, the Northern Transportation Company, and the maritime lien was asserted as superior to all existing claims against said vessel, because of work and materials furnished as aforesaid. The company, at the time of filing the intervening petition and libel, was in the hands of a receiver. The United States intervened in opposition to the claim, and asserted that the barge had been owned by it, and, acting through the United States Shipping Board Emergency Fleet Corporation, the same was sold to the Northern Transportation Company, retaining title, however, to the vessel, until the same was paid for, and that there was a large balance due and unpaid, exceeding in amount more than the proceeds of sale in the hands of the court.

The United States asserted its claim to said vessel, and insisted that its right to the proceeds of sale was superior to that of appellant, whose claim was not maritime in character, being for construction work on the vessel, instead of repairs thereon. The District Court decided, while there was considerable doubt as to whether the work was repair or construction, that, treating the same as repair work, nevertheless appellant would not be entitled to the lien asserted, because of its relation to, knowledge of, and opportunity of knowledge of the government's superior claim and lien for the unpaid purchase money on the vessel, and accordingly dismissed the libel and decreed in favor of the United States for the proceeds in hand. From this decree an appeal was taken.

The case turns upon two questions, viz., the existence of a maritime claim at all, and whether appellants were not charged with knowledge of the government's superior claim, and at least put upon notice of such facts as would upon inquiry have advised them of the same.

First. The right to a maritime lien depends upon whether the work and labor upon the vessel, and supplies furnished, were maritime in character; that is, for repairs or construction. If the latter, no lien exists, whereas, for repairs there is such a lien. This question is not infrequently perplexing, but the facts in this case, especially in view of the recent decision of the Supreme Court of the United States in Thames Towboat Co. v. The Frances McDonald, 254 U. S. 242, 41 Sup. Ct. 65, 65 L. Ed. 245, makes the same free from difficulty. In that case, the court, speaking through Mr. Justice McReynolds, held, where a vessel had not been completed, although the hull had been launched, that work and labor upon and materials furnished for its completion, should be treated as for construction and not repair work. In the Jack O'Lantern Case, 258 U. S. 96, 42 Sup. Ct. 243, 66 L. Ed. 482, decided February 22, 1922, the Supreme Court, speaking through Mr. Justice McReynolds, further amplified and made clear the distinction between repair and construction work.

There is no claim that the vessel in this case had been completed, nor is it denied that the work upon it was for that purpose, as well, doubtless, for making changes in its construction, looking to new purposes for which it was to be used. The two cases cited turn largely upon the maritime character of the claim for which the lien was sought under the Act of June 23, 1910, c. 373, 36 Stat. 604 (Comp. St. §§ 7783–7787), as re-enacted by the Merchant Marine Act of June 5, 1920

(41 Stat. 1005, 1006). In Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U. S. 11, 12, 41 Sup. Ct. 1, 65 L. Ed. 97, a decision of Mr. Justice Brandeis, will be found a comprehensive review of the act in question, particularly sections 1 and 2, and what rights are given and exist thereunder; and in United States v. Carver, 43 Sup. Ct. 181, 67 L. Ed. ——, decided January 2, 1923, the Supreme Court, speaking through Mr. Justice Holmes, also reviewing the act, and especially section 3, as bearing particularly upon the rights of those furnishing work, labor, and supplies to vessels under charter, denied to the claimants a lien. This latter decision has been followed by this court in United States v. Safe Deposit & Trust Co., 289 Fed. 802, decided March 23, 1923, and in United States v. Rapid Coaling & Transfer Co., 289 Fed. 803, decided April 10, 1923.

These cases, relative to supplies furnished to vessels under charter, are conclusive of the present case, though here the contest does not arise by reason of a charter party, but is one in which the rights of an agreed purchaser in possession of the vessel are concerned, under an agreement between the United States Shipping Board Emergency Fleet Corporation and the Northern Transportation Company, the purchaser of the vessel in question, the party for whom the work performed and supplies furnished, claimed for, were ordered. The relations existing between the appellant and the Northern Transportation Company, with whom it contracted, were such as to charge the former with knowledge of the existence of the rights of the government, and, at all events, to have advised it of the true condition respecting such rights, had appellant exercised the reasonable diligence required of one in its position. The duties imposed upon it in these respects are substantially the same as those relating to persons furnishing supplies to a vessel under charter, and the exercise of reasonable promptness, good faith, and due diligence is required of those so situated.

The District Court dismissed the libel on these grounds, in which we fully concur, and also because of the nonmaritime character of the claim involved.

Affirmed.