### UNITED STATES v. VOELP et al.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1924.)

No. 2122.

Maritime liens ☞30—Furnishers of repairs and necessaries held not entitled to liens.

    The furnisher of repairs or necessaries to a vessel on order of a conditional purchaser is not entitled to a lien as against the seller under Act June 23, 1910, §§ 1–4 (Comp. St. §§ 7783–7786), or Ship Mortgage Act, § 30, subsecs. P, Q, R, S (Comp. St. Ann. Supp. 1923, §§ 8146¼ooo–8146¼ppp), where the agreement of sale forbids the creation of a lien, and where reasonably diligent inquiry would have given knowledge of the agreement and its terms.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit in admiralty by the Diebert Barge Building Company against the Northern Barge 44 and others, wherein the United States intervened. From a decree establishing liens against the vessel, the United States appeals. Reversed.

A. W. W. Woodcock, U. S. Atty., and James T. Carter, Asst. U. S. Atty., both of Baltimore, Md.

Edwin F. A. Morgan, Emory H. Niles, and John H. Skeen, all of Baltimore, Md. (John G. Schlipp, James B. Diggs, Bernard S. Gibson, Marbury, Gosnell & Williams, George Weems Williams, and Henry W. Schultheis, all of Baltimore, Md., on the brief), for appellees.

Before WOODS and WADDILL, Circuit Judges, and SOPER, District Judge.

WOODS, Circuit Judge. On November 16, 1920, the United States Shipping Board Emergency Fleet Corporation made a conditional sale of "one incomplete Ferris type wood hull No. 129," called "Caskata," to the Northern Transportation Company  The price was $40,-000, of which $27,000 was unpaid when this litigation began. By the contract title was retained in the seller until the payment of the purchase money. The buyer agreed to keep the property free from all liens and incumbrances.. The hull was laid by the Shipping Board for a steamship. The buyer decided to change the plan and to use the hull in the construction of a coastwise barge. For this purpose it placed the hull in the hands of the Diebert Barge Building Company at Havre de Grace, Md. Upon the insolvency of the Northern Transportation Company the Diebert Barge Building Company filed a libel, claiming a lien for its work. The United States intervened, setting up its claim of $27,-000 of unpaid purchase money. The District Court sustained the position of the government, that the libelant was not entitled to a lien on the ground that the work done was in construction, and not repairs. The decree was affirmed by this court May 1, 1923 (Deibert Barge-Bldg. Co. v. United States, 289 Fed. 805), on the ground stated in the opinion of the District Court, and on the additional ground that the libelant had used no diligence to ascertain the fact that under its contract of purchase the Northern Transportation Company was forbidden to create a lien. United States v. Carver et al., 260 U. S. 482, 43 Sup. Ct. 181, 67 L. Ed. 361.

From Havre de Grace the Caskata, now called Northern Barge 44, was towed to Baltimore. A number of creditors intervened in the Diebert libel, claiming liens for necessaries furnished the barge in Baltimore—some for material, some for labor, the city of Baltimore for wharfage, and the Baltimore Transportation Company for towage from Havre de Grace to Baltimore. The claims were allowed as liens by the District Court in preference to the claim of the government, by decree dated October 7, 1922, before the decision in the Carver Case.

We shall not disturb the finding of the District Court, on testimony which was not conclusive either way, that the material and labor of the interveners furnished in Baltimore were for repairs and not construction. It is true that the evidence of a witness taken by permission after the case came to this court tends to the opposite inference;

but we think that to require litigants with comparatively small claims to controvert testimony so taken would be a hardship which should not be sanctioned.

It is impossible, however, to sustain the claims of the interveners as liens on the vessel under sections 1, 2, 3, and 4 of the act of 1910 (36 Stat. 604 [Compiled Stat. §§ 7783–7786]) and subsections P, Q, R, and S of section 30 of the Ship Mortgage Act of 1920 (41 Stat. 1005 [Comp. St. Ann. Supp. 1923, §§ 8146¼ooo–8146¼ppp]). The last act specifically puts towage in the same class as the other necessaries covered by the statute. In Carver v. U. S., 260 U. S. 482, 43 Sup. Ct. 181, 67 L. Ed. 361, the Supreme Court held that a furnisher of such necessaries could have no lien on the vessel as against the owner, where the charter or the agreement for the sale of the vessel forbids the creation of a lien, and where reasonably diligent inquiry or investigation would have revealed the existence of such a charter or agreement of sale and knowledge of its terms.

The Northern Transportation Company was forbidden by the terms of the agreement of conditional sale to allow any lien to be put upon the vessel. There was no evidence of investigation or inquiry by any of the claimants as to the authority of the Northern Transportation Company to bind the vessel. Therefore the claims as to liens as against the United States must fail.

Reversed.