## THE LIBERATOR.

## GRAYS HARBOR STEVEDORE CO. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. April 14, 1925.)

No. 2314.

Maritime liens ⟨⟩30—Neither United States nor its vessel held liable for services of stevedores rendered without exercise of due diligence to ascertain true ownership.

Neither the United States nor ship owned and registered in its name at home port, designated on stern of ship, were liable in action, under Suits in Admiralty Act, March 9, 1920 (Comp. St. Ann. Supp. 1923, §§ 1251¼–1251¼l), for services of stevedores rendered while ship was in possession of corporation to which the government had contracted to sell it, without inquiry as to ownership of vessel either from those in charge of vessel or at her home port, under Act June 23, 1910, as re-enacted in Merchant Marine Act June 5, 1920, § 30, subsecs. P, Q, R, S, T (Comp. St. Ann. Supp. 1923, §§ 8146¼ooo–8146¼q), since in such case services were rendered without exercise of reasonable diligence to ascertain true ownership of vessel.

Appeal from the District Court of the United States for the District of Maryland at Baltimore; Morris A. Soper, Judge.

Libel by the Grays Harbor Stevedore Company against the United States, owner of the steamship Liberator. Decree of dismissal (298 F. 159), and libelant appeals. Affirmed.

Theodore B. Bruener, of Aberdeen, Wash., and Robert W. Williams and Janney, Ober, Slingluff & Williams, all of Baltimore, Md., for appellant.

F. R. Conway, Admiralty Atty., U. S. Shipping Board, of Washington, D. C. (A. W. W. Woodcock, U. S. Atty., of Baltimore, Md., on the brief), for the United States.

Before WOODS and WADDILL, Circuit Judges, and McDOWELL, District Judge.

WADDILL, Circuit Judge. This is an appeal from a decree of the United States District Court for the District of Maryland, dismissing the libel filed herein.

The libelant, the Grays Harbor Stevedore Company, a corporation of the state of Washington, having its place of business at Aberdeen, in the port of Grays Harbor in that state, filed its libel against the government under the Suits in Admiralty Act March 9, 1920, 41 St. L. 525 (Comp. St. Ann. Supp. 1923, §§ 1251¼–1251¼l), to recover $4,664.22, the amount of its bill for services and expenses incurred and advances made in connection therewith for stevedoring the steamship Liberator, a vessel belonging to the United States, and theretofore contracted to be sold by it to the Atlantic, Gulf & Pacific Steamship Corporation, a company chartered by the laws of the state of Maryland, having its main office in the city of Baltimore, Md., and its Pacific Coast office at San Francisco, Cal.

At the time of the rendition of the service, the Liberator was in the possession of and being operated by the Atlantic, Gulf & Pacific Steamship Corporation, pursuant to the contract of sale and purchase aforesaid. There is no dispute as to the service having been rendered, nor as to the reasonableness of the charge, nor that a maritime lien may ordinarily be obtained for stevedoring services. The claim, however, is made that no liability or lien exists against the ship because of the failure of the libelant to exercise the reasonable degree of diligence required to ascertain whether the person ordering the work had authority to do so on behalf of the vessel; and it is further insisted that the Atlantic, Gulf & Pacific Steamship Corporation, the purchaser of the steamship, and who was engaged in its operation, and by whom the service was ordered, had no such authority, and it is alone responsible for the claim asserted.

Briefly, the facts are these: The Atlantic, Gulf & Pacific Steamship Corporation was in possession under contract of purchase with the United States, represented by the United States Shipping Board Emergency Fleet Corporation and the United States Shipping Board, of six ocean-going vessels, of which the Liberator was one, engaged in the Pacific trade. The company, through its Pacific Coast office, in the month of January or February, 1922, had a general contract or understanding with the libelant for the stevedoring its ships at Grays Harbor. On the 22d of June, 1922, the Liberator entered the port of Grays Harbor to take on a cargo of lumber, and the company, acting through its port captain, in pursuance of the general understanding aforesaid, notified the libelant of the arrival of the vessel, and the latter promptly loaded the same. At the completion of the service, a bill therefor was rendered as usual, and in accordance with what had been the custom, through the company's branch office at San Francisco, but the same was not paid as theretofore, and it still remains unsettled for.

The libelant, it seems, kept its account against each ship, its agents and owners, and in this service knew only the Atlantic, Gulf

& Pacific Steamship Corporation, and its representatives, and took no steps to ascertain the rights of the government in the vessel, nor had it knowledge that any such rights existed. The ship flew the house-flag of the Atlantic, Gulf & Pacific Steamship Corporation, and the libelant's representative understood from that company's agent that that company was the owner of the vessel. The ship was registered in the name of the United States at San Francisco, as its home port, and the home port of the vessel was appropriately placed upon the stern of the vessel according to law. Libelant made no inquiry whatever as to the ownership of the vessel, either from those in charge of her, or at her home port (Act June 23, 1910, 36 St. L. 604, Comp. Stat. §§ 7783–7787 as reenacted in the Merchant Marine Act of June 5, 1920, 41 Stat. L. 988, § 30, subsecs. P, Q, R, S, and T [Comp. St. Ann. Supp. 1923, §§ 8146¼ooo–8146¼q]); and the liability here turns solely upon whether or not, in the circumstances mentioned, it was required to exercise a greater degree of diligence than it did.

While there was much to warrant libelant in the belief, having regard to its previous transactions with the several vessels of the Atlantic, Gulf & Pacific Steamship Corporation during the preceding seven months, that it was dealing alone with that company, and that its bill would be paid as usual by that company, and that it actually did not know of the interest of the government in the ship, still the government was the owner of the vessel, and the Atlantic, Gulf & Pacific company merely an agreed purchaser in possession, and held the ship according to the terms of the contract of purchase, and the government's ownership could have been ascertained by inquiry at the home port of the vessel at San Francisco. That would at least have put libelant on inquiry as to whom the ship belonged, as well as to the authority of those operating it; and it seems manifest from an examination of libelant's witness Hammond, general agent of the Atlantic, Gulf & Pacific Steamship Corporation at San Francisco, that while he had not detailed information of the conditions under which the ship had been held and operated, he knew or believed that they had not been paid for, and had probably been sold on the deferred payment plan. This would also have put libelant on inquiry, and admonished it that it could not with safety perform the service on the faith and credit of the ship, assuming Hammond would have given the information he now imparts.

This case is a close one upon the facts, and one in which there was much justification in the libelant's doing what it did, and proceeding upon the theory, in the light of its past connection with it, that the Atlantic, Gulf & Pacific Company was the sole owner of the ship. Nevertheless, we can but feel that the case falls within the rulings heretofore made by this court in its previous decisions (Deibert Barge Building Co. v. United States [C. C. A.] 289 F. 805; Standard Oil Co. v. United States [C. C. A.] 1 F.[2d] 961; Frey & Son, Inc., v. United States [C. C. A.] 1 F. [2d] 963; Gill & Sons Forge & Machine Works v. United States [C. C. A.] 1F.[2d] 964), as well as of the decisions of the Supreme Court bearing incidentally on the subject. (United States v. Carver, 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361; Colonial Beach Co., Owner of the St. Johns, v. Quemahoming Coal Co., 260 U. S. 707, 43 S. Ct. 246, 67 L. Ed. 474; Piedmont, etc., Coal Co. v. Fisheries Co., 254 U. S. 1, 11, 41 S. Ct. 1, 65 L. Ed. 97).

The libelant having failed to exercise the reasonable diligence required of it, indeed having in effect made no inquiry to ascertain the true ownership of the vessel to which the service was rendered, no recovery can be had for the same, nor the amount sued for, either against the ship or its owner, the United States of America.

The decision of the District Court will be affirmed.