**GOUDY & STEVENS, INC., Plaintiff,**

v.

**CABLE MARINE, INC. 16th Street Properties and the Vessel Warrior, Defendants.**

**Civ. No. 85–0234–B.**

United States District Court,
D. Maine.

July 17, 1987.

Peter L. Murray, Jane B. Hartwell, John R. Bass, II, Portland, Me., Thomas F. Howard, Michael Haratz, New York City, for plaintiff.

Martin R. Johnson, Daniel W. Boutin, Portland, Me., for defendants.

## MEMORANDUM AND ORDER

CYR, Chief Judge.

The plaintiff filed a complaint in state court on July 9, 1985, alleging in Count I that, prior to June 28, 1985, it furnished materials and labor for the launching, outfitting, repair, and construction of the vessel WARRIOR, and in Count II that, subsequent to the sinking of the WARRIOR on June 28, 1985, it furnished materials and labor in connection with the salvage and repair of the WARRIOR. Plaintiff asserted liens on the WARRIOR totaling $36,-340.67, pursuant to the Maine Ship Lien Act, Me.Rev.Stat.Ann. tit. 10, §§ 3851–3869, and demanded that its liens be foreclosed and the vessel sold, with the proceeds applied to the debt. At the same time, the plaintiff caused the WARRIOR to be attached.

On July 19, 1985, defendants removed the case to this court, pursuant to 28 U.S.C. § 1333, which confers original and exclusive jurisdiction upon the United States district courts in civil cases sounding in admiralty. Alternatively, defendants invoked the federal diversity jurisdiction under 28 U.S.C. § 1332.

Subsequent to removal, plaintiff contended that its state court action came within the "saving to suitors" clause of 28 U.S.C. § 1333. Thus, according to the plaintiff, the sole basis for federal court subject matter jurisdiction is diversity of citizenship. Noting, *sua sponte*, that "a federal district court acquires no removal jurisdiction over a claim that the state court initially lacked subject matter jurisdiction to decide," *Daley v. Town of New Durham*, 733 F.2d 4, 6 (1st Cir.1984), the court directed the plaintiff to address the following issues: whether the statutory remedy provided by Maine law is a remedy "saved to suitors" pursuant to 28 U.S.C. § 1333; whether this action is *in rem* or *in personam*, or both; and whether the Maine Ship Lien Act is superseded by the Maritime Lien Act, 46 U.S.C. §§ 971–975.[1]

Plaintiff submitted a memorandum asserting that the Maine Ship Lien Act provides for an *in personam* action with a special method of attachment; that the "saving to suitors" clause of 28 U.S.C. § 1333 preserves *in personam* actions in which a vessel is attached pursuant to a state ship lien statute; and that the Maritime Lien Act, 46 U.S.C. §§ 971–975, super-

1. Section 975 of the Maritime Lien Act states: This section [46 U.S.C.S. §§ 911 et seq.] shall supersede the provisions of all State statutes conferring liens on vessels, in so far as such statutes purport to create rights of action to be enforced by suits in rem in admiralty against vessels for repairs, supplies, towage, use of dry dock or marine railway, and other necessaries.
(June 5, 1920, ch. 250, § 30, Subsec. T, 41 Stat. 1006.)

sedes state lien statutes only insofar as such statutes create rights of action *in rem.* Plaintiff then filed a motion for leave to amend its complaint, demanding judgment against defendants Cable Marine, Inc. and 16th Street Properties, and demanding foreclosure of its liens on the vessel WARRIOR in the event of a default in payment of the judgment.

## DISCUSSION

■ Although federal maritime law preempts state statutes conferring liens for vessel repairs, *see* 46 U.S.C. § 975, vessel *construction* contracts are not maritime contracts; hence not within the maritime jurisdiction. *See Thames Towboat Co. v. The Schooner "Francis McDonald,"* 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed.2d 245 (1920). In *The "Francis McDonald,"* the Supreme Court held that the reasons for excepting vessel construction contracts from admiralty jurisdiction apply to any agreement "for the work and material necessary to consummate a partial construction and bring the vessel into condition to function as intended." *Id.* at 245, 41 S.Ct. at 66.

■ Count I of the complaint states that plaintiff furnished materials and labor "for the launching, outfitting, repair and *construction*" of the vessel WARRIOR. (*Emphasis added.*) Although plaintiff presently asserts that "the work done ... was repairs," Plaintiff's Memorandum in Opposition to Motion for Dissolution of Attachment and Dismissal of Complaint, at 2, review of the record reveals the following facts. The vessel "was built in East Boothbay, Maine, by Goudy & Stevens [plaintiff] for John Payson and Warrior Yachts, Inc." *Id.* While still in East Boothbay, the WARRIOR was purchased from its original owners by the defendants. *See id.* Defendants then asked plaintiff to "jury rig" the vessel, i.e., to make it temporarily serviceable or seaworthy, "so that it could be moved to Florida where [defendants'] employees would do permanent work on the vessel." Second Affidavit of Joel B. Stevens. Thus, notwithstanding plaintiff's subsequent disavowal of any work except "repairs," the work performed by plaintiff,

as described in Count I of the complaint, was performed on a vessel whose construction was not yet complete, and was designed to "bring the vessel into condition to function as intended," *The "Francis McDonald,"* supra at 245, 41 S.Ct. at 66.

■ Count I was brought under the Maine Ship Lien Act, Me.Rev.Stat.Ann. tit. 10, § 3852, for "labor and materials for building a vessel." Since state statutes authorizing vessel construction liens are not preempted by federal maritime law, the Maine court had subject matter jurisdiction of Count I.

Accordingly, as the parties are in agreement that there is complete diversity of citizenship among the parties to the action, jurisdiction was acquired by this court under 28 U.S.C. § 1332.

Upon timely removal of an action in which the state court has subject matter jurisdiction, here of Count I, "the entire case may be removed and the district court may determine all issues therein," 28 U.S.C. § 1441(c). Once properly removed, the action "proceeds according to the Federal Rules of Civil Procedure and is treated as though it had been commenced originally in the federal court." Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3738 at 556–57 (1985), *citing Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 437, 94 S.Ct. 1113, 1123, 39 L.Ed.2d 435 (1974). "Amendments may be made to pleadings filed before removal." *Id.* at 558. *See also* Fed.R.Civ.P. 81(c) ["These rules apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal."]. On August 11, 1986, plaintiff filed a motion for leave to amend both counts of the complaint, so as to plead an action *in personam* with auxiliary attachment of the vessel. The Federal Rules of Civil Procedure provide that a party may amend its pleading by leave of the court and that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). There being no objection, the motion to amend will be *granted.*

On December 31, 1985, defendants moved to dissolve the attachment, dismiss

the complaint, and for an order requiring plaintiff to provide security. On August 28, 1986, defendants moved to amend their answer and counterclaim. The court considers each motion in turn.

### A.

Defendants' motion to dissolve the attachment and their motion to dismiss the complaint argue, first, that Count I seeks to enforce a salvage lien and that the Maine Ship Lien Act does not provide for such a lien, and, second, that the liens asserted in Counts I and II are time-barred.

 The record is not developed sufficiently to enable a determination of the validity of these liens, but their validity has no bearing upon the subject matter jurisdiction of the court. Count I is predicated on a state law claim for construction of a vessel. Count II states a claim for salvage and/or repair of a vessel. The state court having had subject matter jurisdiction over Count I, the district court acquired removal jurisdiction of the action, pursuant to 28 U.S.C. § 1332, irrespective of the validity of the asserted liens.

The court will *deny* the motion to dismiss the complaint and the motion to dissolve the attachment, without prejudice to the renewal of the latter motion.

### B.

The counterclaim demands damages for negligence and breach of contract on the part of plaintiff in connection with the sinking of the WARRIOR on June 28, 1985.[2] On August 28, 1986, defendants filed a motion to amend the counterclaim, pursuant to Fed.R.Civ.P. 15, to add certain causes of action.[3]

Plaintiff objects to the motion to amend on the ground that further discovery would be necessitated after the expiration of the discovery deadline. Nevertheless, plaintiff waives its objection, provided it is permitted to conduct further discovery on the counterclaims thus added or amended. Defendants do not oppose further limited discovery. Leave to amend "shall be freely given when justice so requires." Fed.R. Civ.P. 15(a).

The court will *grant* the motion to amend the answer and counterclaim. The discovery deadline on the counterclaims added by amendment will be extended 90 days from the entry of this Memorandum and Order.

### C.

Defendants move for an order requiring plaintiff to provide security on their counterclaim, pursuant to Rule E(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims, which states in pertinent part:

> Whenever there is asserted a counterclaim arising out of the same transaction or occurrence with respect to which the action was originally filed, and the defendant or claimant in the original action has given security to respond in damages, any plaintiff for whose benefit such security has been given shall give security in the usual amount and form to respond in damages to the claims set forth in such counterclaim, unless the court, for cause shown, shall otherwise direct.

The counterclaim concerns the same transaction or occurrence as the original action, and defendants provided security for plaintiff's claim for damages pursuant to Supplemental Rule E(5). *See* Defendants' Memorandum in Support of Motion for Provision of Security by Plaintiff, at 2. Nevertheless, plaintiff contends that Rule E(7) is made inapplicable to the counter-

---

**2.** Defendants' counterclaim alleges that the vessel sank due to plaintiff's (1) negligence; (2) breach of a bailment contract; and (3) failure to perform work under a contract in a workmanlike manner. Additionally, the counterclaim alleges that, on a separate occasion, plaintiff negligently operated one of the vessel's engines, causing extensive damage.

**3.** In addition to the claims set forth in the original counterclaim, the amended counterclaim alleges that plaintiff acted negligently and in breach of a contractual duty, by failing to berth the vessel safely and by failing to provide watchman services. The amended counterclaim alleges also that plaintiff converted certain equipment aboard the vessel.

claim by Supplemental Rule A, which provides:

> These Supplemental Rules apply to the procedure in admiralty and maritime claims within the meaning of Rule 9(h) with respect to the following remedies:
>
> > (1) Maritime attachment and garnishment;
> >
> > (2) Actions in rem;
> >
> > (3) Possessory, petitory, and partition actions;
> >
> > (4) Actions for exoneration from or limitation of liability.

Plaintiff argues that, in order for Rule E(7) to be held applicable to the counterclaim, the counterclaim must be found to have invoked one of the remedies specified in Rule A. As the counterclaim does not request a Rule A remedy, plaintiff insists that it cannot be required to provide security. Plaintiff cites no authority, and the language of the Supplemental Rules points to no such conclusion.

■ Rule E(7), tracking the compulsory counterclaim language of Fed.R.Civ.P. 13(a), speaks of "a counterclaim arising out of the same transaction or occurrence with respect to which the action was originally filed." Admiralty Rule 50, the predecessor to Rule E(7), did contain "an inherent limitation ... that the cross-libel was itself required to be of a maritime nature," 7A *Moore's Federal Practice* ¶ E.15 at E–720 (2d ed. 1983). Although there is serious question as to whether this limitation from former Admiralty Rule 50 survives under Rule E(7), *see id.* at E–720 to E–727, a plaintiff may be compelled to give security under Rule E(7) "even though the claim against him is one that, but for the fact it is being asserted by way of counterclaim ..., could not properly have been asserted in rem or quasi in rem," *id.* at 730. *See, e.g., Spriggs v. Hoffstot,* 240 F.2d 76, 78 (4th Cir.1957) [rule for provision of security

on counterclaim may be invoked where the original libel is *in rem* and the cross-libel is *in personam* ]. Even though it requests none of the remedies listed in Rule A, the counterclaim is maritime in nature and arises out of the same transaction or occurrence as plaintiff's claim. Accordingly, the security provisions of Rule E(7) may be invoked by defendants on their counterclaim.[4]

■ Alternatively, plaintiff contends that the countersecurity requirement of Rule E(7) does not apply because of Rule B(1), which provides:

> With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees to be named in the process to the amount sued for, if the defendant shall not be found within the district.
>
> . . . .
>
> In addition, or in the alternative, the plaintiff may, pursuant to Rule 4(e), invoke the remedies provided by state law for attachment and garnishment or similar seizure of the defendant's property. Except for Rule E(8) these Supplemental Rules do not apply to state remedies *so invoked.*

(*Emphasis added.*) Inasmuch as the WARRIOR was attached pursuant to state law, plaintiff protests invocation of the Rule E(7) counter-security provision in these circumstances. Although it is true that plaintiff attached the WARRIOR pursuant to state law procedures, plaintiff has *not thereby invoked* state law remedies within the meaning of Rule B(1).

Supplemental Rule B "preserves the traditional right of the maritime plaintiff to bring the action *quasi in rem.*" *Cordoba Shipping Co., Ltd. v. Maro Shipping Ltd.,* 494 F.Supp. 183, 186 (D.Conn.1980). Rule

---

**4.** Although the counterclaim need not do so, plaintiff's claim must come within the scope of Rule A in order for defendants to invoke Rule E(7). Count II of the complaint pleads a maritime claim. Since the Federal Rules of Civil Procedure "apply to civil actions removed to United States district courts from the state courts and govern procedure after removal,"

Fed.R.Civ.P. 81(c), and govern procedure "in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty," Fed.R.Civ.P. 1, Count II is governed by the Supplemental Rules. Moreover, because Count II seeks to enforce a lien by means of a maritime attachment, it comes within the scope of Rule A(1).

4(e) of the Federal Rules of Civil Procedure, as amended in 1963, similarly permits "the institution of original Federal actions against nonresidents through the use of familiar State procedures by which property of these defendants is brought within the custody of the court and some appropriate service is made upon them." *See* Fed. R.Civ.P. 4, Notes of Advisory Committee, 1963 Amendment Subdivision (e). Thus, attachment of property pursuant to the Rule B procedures, or pursuant to state law procedures incorporated in Rule B by Fed.R.Civ.P. 4(e), is permitted *only* as an incident to an attempt to acquire *quasi in rem* jurisdiction. *See Cordoba, supra* at 185 (citing cases). Although the WARRIOR was attached under the Maine Ship Lien Act, the attachment was not incident to an attempt to gain *quasi in rem* jurisdiction.

The Maine Ship Lien Act provides for the attachment of a vessel whether or not its owner is subject to the personal jurisdiction of the Maine courts. Defendants do not challenge the personal jurisdiction of the Maine courts, and there would seem to be little doubt that defendants are subject to the jurisdiction of the United States District Court for the District of Maine in an action on a contract made and performed or breached in Maine. *See* Me.Rev.Stat.Ann. tit. 14 § 704–A(2)(A) [any person who transacts business in state is subject to personal jurisdiction of state courts]. Thus, as plaintiff's attachment was not an incident of an attempt to gain *quasi in rem* jurisdiction, the Rule B(1) restriction on the application of the Supplemental Rules is not operative in the present action. *Cf. Cordoba, supra* at 185–86 [where court has personal jurisdiction over defendant, Rule B(1) provides no basis for attachment, but Fed.R.Civ.P. 64 provides basis for state law attachment].

Supplemental Rule E(7) states that a plaintiff in these circumstances "shall give security in the usual amount and form to respond in damages to the claims set forth in such counterclaim, unless the court, for cause shown, shall otherwise direct." Thus, "the rule allows the District Court a

discretion whether or not to require bond from the cross-respondent." *Spriggs v. Hoffstot, supra* at 80 (under predecessor rule: Admiralty Rule 50). *See also Miskiewicz v. Goodman,* 341 F.2d 828, 831 (4th Cir.1965) (*per curiam*); *Expert Diesel, Inc. v. Yacht 'Fishin Fool,'* 627 F.Supp. 432, 433 (S.D.Fla.1986) [district court "should be particularly reluctant to compel a party to post counter-security where that party is not attempting to secure the release of any property"]; *Moore's Federal Practice, supra* at E–738.

The court may direct that countersecurity be provided in an amount "not necessarily related to the amount of bond theretofore furnished by the original respondent and not necessarily in a sum sufficient to cover the claim of the cross-libel, but in an amount just and reasonable under all the circumstances." *Spriggs, supra* at 80. In *Spriggs,* the appellant, who had furnished bond in the amount of $25,000, requested bond in the amount of $150,000. The court observed that, since the penalty for failure to furnish the bond would be a stay of the trial on the original libel, "[t]he effect would be to require [the appellee] to give bond for many times his claim, or abandon the suit." *Id.* at 78. *See also Expert Diesel, Inc., supra* at 433 [purpose of Rule E(7) "is to place the parties on equal footing regarding security, not to inhibit the plaintiff's prosecution of its suit as a maritime lien holder"].

Defendants have posted security in the amount of $40,000 on the original claim, *see* Defendants' Memorandum in Support of Motion for Provision of Security by Plaintiff, at 2, but now seek security in the amount of $690,000 from plaintiff, the full amount of the counterclaim *ad damnum*.[5]

"[T]he amount of security normally should be limited to that provided in the original action." *William B. Cannell Boatbuilding, Inc. v. Yacht Wailana,* Civil No. 83–0348–B, at 3 (D.Me. Aug. 3, 1984) (quoting Magistrate's Order) [Available on WESTLAW, DCT database]. *See also Moore's Federal Practice, supra* at E–737 to E–738 [where the counterclaim "is not one that could initially have been com-

---

**5.** The amended counterclaim seeks damage of $932,390.67.

menced in rem or quasi in rem ... there seems little justification for ever requiring a larger bond on the counterclaim than is required in the original action"].

Accordingly, the court will *grant* defendants' motion pursuant to Rule E(7) and will *direct* the provision of security in the amount of $40,000.

## ORDER

The court GRANTS the motion to amend the complaint to state an *in personam* claim with auxiliary attachment.

The court DENIES the motion to dismiss the complaint, and the motion to dissolve the attachment, without prejudice to the right to renew the later motion upon development of the record.

The court GRANTS defendants' motion to amend the answer and counterclaim, and ALLOWS an additional 90–day period for discovery on the counterclaims added by amendment, commencing upon the date of entry of this order.

The court GRANTS defendants' motion for provision of security by plaintiff, and DIRECTS that plaintiff post satisfactory countersecurity in the amount of $40,000, pending which, pursuant to Supplemental Rule E(7), proceedings on the original claim are STAYED.

SO ORDERED.